Call our next case of the morning, United States v. John Bencivengo. I was just looking up, she didn't say anything. You want me to pull it up? No. Okay. Half round you pull Clark and then you go back to Chambers. Yeah. Good morning, Your Honors. Good morning, Your Honors. May I, with the Court's permission, if I could reserve three minutes for rebuttal? That's granted. My name is Jerry Bellarado. I'm an attorney in Trenton, and I represented John Bencivengo at trial on this matter and I'll continue to represent him on this appeal. When John was arrested by the FBI in this matter, he said to the FBI, I'm so ashamed and I'm so embarrassed that I took money from Marlisa Luba, but I don't know what I did wrong. He says, I really didn't do anything. It sounds like a closing argument to a jury, Mr. Bellarado. What does that have to do with the Hobbs Act violation, the Hobbs Act issue, for example, that's been raised here? Judge, it has to do with the Hobbs Act issue because the Hobbs Act issue focuses prosecution on the Hobbs Act issue, as the case law has stated and as this Court has stated, should focus on the office. Why doesn't Mazzei doom your client on this issue? I'm sorry, Judge? Why doesn't the Mazzei case doom your client on the Hobbs Act case? Why does the government have to show anything more than it showed, which was that Mr. Bencivengo held an office, that he also had influence and held himself out to have influence, and that he evidenced that by making certain statements to Ms. Luba that he could or was willing to do certain things and then accepted money. I mean, why isn't that game set and match? Well, first of all, Judge, the language in the Mazzei case, in the majority, is not just mere influence. We're required to follow the majority. I know you argued the dissent in your 28J, but we're required to follow the majority. I appreciate that, Judge, and I'm sure you will, although I do believe that when this Court did decide the Manzo case, that it did find some merit in the comments that were made by Judge Gibbons in the dissent. But it is still, I suggest, Your Honors, the focus is still on the office because it says that he not only has to have the mere influence, but in fact had the effective power to determine the issue. But Mazzei didn't have that. I mean, the facts of Mazzei clearly show he didn't have that. He was a state senator. He wasn't the head of the State General Services Authority, which has the power to enter into leases with the state. That's correct, Judge. But what the Court found in Mazzei is that he convincingly demonstrated to, I think his name was Kelly, the individual that was trying to put the Pittsburgh lessor. That's correct. What he convincingly demonstrated to him that Mazzei had the effective power to deliver, and that was a very fact-sensitive issue. So it was Kelly's reasonable belief that he had the power? Yes, yes. His reasonable belief that he had the power, and it was based on. Why does that matter? Why does it matter whether it's a belief or not if the person is exerting their influence and has agreed to exert their influence, which clearly existed in this case? Why isn't that under color of official right? Well, because I suggest, Your Honor, it's important because the intention of Congress is to not prosecute anyone who does not have the ability to act under or at least have the apparent ability to act under color of official right. And that's important, the apparent ability. I'll give you just one example. Ms. Luba, in the various discussions, wants someone off the school board, right? Yes, Your Honor. And in response, your client says, I'll approve. Now, that sure sounds to me like a statement indicating that he has influence, if not authority, and we're talking about influence here, I think, in this context, and that he wants her to think that, doesn't he? What else would you infer from that? What else would this jury have inferred from it? Judge, honestly, that's not exactly the facts in the case. It's a little different than what had happened. That aspect of the case is what happened. He didn't say that? Well, not with regard to removing somebody from the school board. What happened is that there was someone who was going to leave the school board. Ms. DelGiudice was going to leave the school board, and she said to Mr. Benzevango, she says, you know, I want, if that woman leaves, I want to have somebody to run. She wants a more favorable person. So what's the big deal? He's approving. All right, I didn't flesh it out that we get one person off and another person who's favorable on. What's the difference if the person, the difference between getting a problem person off and a helpful person on? Because, Judge, it was not a function, an official function of his office. He had no authority to do that as mayor, because what happened was. . . He was a Republican county chairman, wasn't he? No, he was not. Wasn't he at one point a Republican Party official in the county? Yes, he was, Judge. Didn't he have influence as a consequence of that? I'm sorry, Judge. Yes, Judge, you're correct. He had tremendous influence. He was a very. . . Bolstered by his mayor position? He had a great deal of influence. He had. . . And, Judge, once again, I'll apologize ahead of time, but I'm going to go back to what Judge Gibbons said in his dissent. This was personal power. This was personal influence. This was his personality, his personal political influence. And, of course, the majority would say, what's the difference? Well, I suggest, Your Honor, that Congress would say that there's a very big difference, and that Congress intended with the Hobbs Act to direct toward the color of official right, whether, in fact, someone either has the apparent authority to do so, but it has to focus on the conduct of the office. But if he had been a retired mayor, then that might be a good argument, right? He's a private citizen. It's hard for a retired mayor to act under color of right. But how do you get around the fact that when all this was happening, he was the mayor? How do you get around the fact, Your Honor, if I can respond with a question, the fact that in the town that we're discussing, they had three completely distinct governing bodies, the fire districts, the school board, and the mayor and township council. One had no official authority over the other, and Marisa Luba admitted that she knew we had no official authority. So you want us to establish the rule that where the government official, who is accused of acting under color of right, has no actual legal authority to effectuate an action, then no prosecution can be brought under this statute. And also where the payor of the bride does not have a reasonable basis to believe, being consistent with Massey, does not have a reasonable basis to believe that the person receiving the bride has the effective power to accomplish whatever it is they're bribing him to accomplish. Can you get any such limitation from the language of Massey? I'm sorry, Your Honor. Can you get any such limitation that you're urging on us from the language of Massey? I can, Your Honor. I think that Massey calls that the payor must have a reasonable belief as to the concomitant of the official's position possess not just the mere influence, but the effective power to determine who got the leases in that case. And they made a factual finding in that case based on very strong facts, facts in Massey that are much stronger than here. But then I get back to the issue, why does that matter? Here, she had a reasonable belief that he was going to be able to exert his influence and accomplish it. I mean, power versus influence, why does it matter? They were conspiring here to bring about something in government for personal gain that was under color of official rights. Especially when Massey uses the term effective authority, not actual authority. No, I agree, Your Honor. But I think the distinction is important because Congress, I don't think, intended to limit personal political power. I think that Congress only intended by the Hobbs Act, and I think it's clear from the cases, that's why the ‑‑ Well, if he weren't the mayor. I'm sorry? If he weren't the mayor, then you'd have a good argument. But he is the mayor. And that comes with it, power that is more than merely personal power. Your Honor, I can understand why Your Honor would say that. And in defense of that, the reason is this. And it's in the facts of the case. In the Massey case, Kelly was a novice. He said, I thought that's the way things went in Harrisburg. That's a factual distinction, Mr. Alvarado. It doesn't go to the legal standard here. Tell me how you get around this language from Massey. It is clear, of course, that defendant had no statutory power as a state senator to control the granting of leases by state executive agencies. But in order to find that defendant active, quote, under color of official right, the jury need not have concluded that he had actual de jure power to secure a grant of the lease, so long as it found that Kelly held and defendant exploited a reasonable belief that the state system so operated that the power, in fact, of defendant's office included the effective authority to determine recipients of the state leases. How do you get around that? Here's how, Judge. Because on the facts of that case, as I said, Kelly was a complete novice. Massey came to him, told him how much to charge for the lease, told him that he would include janitorial services with the lease, brought inspectors there, came to him. Doesn't Lupa's sophistication in the New Jersey political world make her belief even more reasonable? I mean, she knew how it worked. She'd made a fortune doing precisely this. I want to become an insurance broker in New Jersey when I leave this job, after reading the facts in this case. That would be revolutionary, Your Honor. I told you I wanted to do one revolution. Would we have to recuse in your case? Your Honor, by this time, this woman had already successfully bought, bribed three members on that board. She didn't need the mayor for that. The person, remember the relationship she had with the mayor? So it was a gratuity. We felt badly for the guy, and let me throw him a few thousand bucks. Poor guy. Under the facts of this case. Generous soul she was. She knew well that he was not using his official duty because he had no official. He went to the woman and said, what did he say to the woman that Pratico? He said, don't forget, you have to support the people that support you. He had no official authority. She went to him. She was his best friend in the world. She went to him, and remember it was originally a loan, and then she changed it from a loan. She said, well, I know you can't pay me back, so help me out with Pratico. And he said, okay, I'll help you. And she was purchasing his personal. Doesn't that hurt you? Okay, I'll help you? I mean, doesn't that really hurt your client's case? No, because, Judge, because of their personal relationship, she was purchasing and she was helping him in a personal sense and was asking him for his personal. And the jury could have found that. The jury, well, based on what I've seen today, you probably made a pretty effective and compelling argument to the jury that that was the case, but the jury just didn't agree. Why is it not a jury question at the end of the day? I think because, as Judge Gibbons would say, in these political times, in cases like this, when the government shows a photograph of a mayor in a hotel room in Atlantic City holding $5,000 in his hand, given to him by a government informant who's taking pictures and recording him, and he says, well, how can I help you? There's little chance that a jury is going to rationally apply the law and the objects of Congress when they pass the Hobbs Act. We only had audio here, right? We didn't have video, right? We only had, yeah. Counsel, you didn't object to any of the instructions, did you? No, because I felt at the time that the instructions were what I had to deal with. Okay. All right, we'll hear from you on rebuttal. Thank you very much. Good morning. May it please the Court, I'm Stephen G. Sanders, Assistant United States Attorney from the District of New Jersey, on behalf of the Pele United States in this case. Mr. Sanders, I've been dragged kicking and screaming into the digital era. I assume that prosecutors and your FBI agents aren't using Niagara recorders anymore when they're doing undercover work and wiring up a witness? That's correct. Yeah, that's what I was afraid of. But we are using – there is video in this case. Oh, is there video? Yes, these meetings were video recorded. I thought there was only audio. No, there's video and audio. And if the Court wants, we have a CD-ROM. We're happy to produce it. But we put the transcripts in the record. And let me begin where Judge Hardiman left off with Mr. Ballarato. At the end of the day, this is a legal sufficiency challenge. The defendant does not challenge the instructions that were given to the jury on what constitutes an official act, and those instructions were correct. And under the instructions and the evidence, the question for this Court is, does the inferences and the facts viewed in light most favorable to the government, does it pass the threshold of bare rationality? And the answer is yes. And I'd like to – Well, the corollary question is, isn't this just straight application of the principles set out in the Zay? It is. And I would like to – and I should have focused on this in my brief. This goes both to the actual authority and even to the apparent authority argument. And I should have highlighted this actually. Well, is there any actual authority here? Well – Actually, is there any actual authority? Well, I mean, there's testimony that the mayor has influence in his official position as mayor. Influence is not statutory authority. No, it's not statutory. The real question here is influence versus power. Because under Mzee, it required that there was a reasonable belief, and here it would be on the part of LUBA, that the state system so operated that the power in fact of defendant's office, and that would be the power of Ben Savango as mayor, included the effective authority to determine recipients. So isn't Mzee one step removed from this situation? Because we know that LUBA had no reasonable belief that the mayor had the power in fact, by virtue of his office, to have authority over this issue. Isn't that correct? No. No. We know that she knew that he had no official statutory power. No power. Influence, but not power. But doesn't Mzee require her belief that he had the power to do it? If we even get to Mzee, right? If he has the actual authority – Well, Mzee is key. We need to talk about Mzee because it's controlling here, and we're either within it or we're going to be asked to go one step beyond it. Okay. Let me read just this. I did two parts in the record, which I should have stressed more in my brief, and I apologize for doing that. And this is one of the last recordings when Ms. LUBA is paying the second pride. It's page 1007 of my supplemental appendix. And she's leaving the hotel room, and she says, let's just make this work. He says, huh? And she says, I mean, while you're in office, we only have a certain amount of time. What does he say? I know. All right. Bye, honey. Because the influence – I mean, I know. The day you step out of that mayor's office, you know, you're yesterday's newspaper. You're just not relevant anymore. But that's a matter of influence, not power.  And if we're talking influence, and that takes us under Mzee instead of actual – Well, yeah, isn't effective authority a form of influence? Exactly. It is. I mean, let's, again, return to the precise language of the relevant portion of the Mzee opinion. So long as it found that Kelly held and defendant exploited a reasonable belief that the state system so operated that the power, in fact, of defendant's office included the effective authority to determine recipients of the state lease. Your contention is that's what we have here. That's correct. And the reason why is because – So is the emphasis on effective authority as opposed to power, in fact? It is effective authority if you agree with my adversary's contention that there was no actual power, right? Because that's why – I mean, the jury instructions were a little jumbled because they defined official act at the end after it includes the language from Mzee. But there was two paths to liability here, right? He either had the actual power to do this or actual influence, or he had the perceived influence. Are the instructions in the record? Yes, they are. Or Ms. Luba believed one or the other. Well, it – I think her belief is irrelevant. It turns on her reasonable belief of something, right? I don't believe her belief is relevant if he has the actual authority. If you're paying for an official act – Mzee says a reasonable belief. It's in there. Right. But that – because Mzee controls in cases where the defendant doesn't have the actual power to do this. Now, Mr. Belarod did not challenge the jury instructions, which say – I guess I now don't understand your argument. What? I mean, we all agree that this is not an actual power case. Is that right? You don't agree? I don't. He's mayor. He's mayor. He's talking about trading something for appointments or getting people off of school. He doesn't appoint people to the school board, does he? He doesn't decide whether they serve? And he can't take them off. Not by statute. Okay. That's called power. That's called actual authority under a statute. That's power under a statute. I agree. But this is how the instructions – and they're at – this part of the instructions is at page 639 of the supplemental appendix.  It defined official action as followed. Official action means any action by an official relating to their employment or a function as a public servant – I guess I don't understand what you're talking about the instructions, since there – I don't understand there to be a challenge to the instructions here, is there? There isn't. All right. So what are we talking about the instructions and not what the law is pursuant to Ms. A? Well, and the only reason I'm belaboring this is because the instructions defined official action to include official influence of this sort. And so if – Whether that's right or wrong. It's official influence? Whether it's right or wrong. So you're arguing it's a sufficiency of the evidence, and this issue isn't even before us. Well, I'm saying if that's a correct instruction, then the evidence is plainly sufficient based on what I just read and based on that little excerpt and how Ms. Luba described it when she was asked about it at trial. Well, what we've heard from your adversary are numerous attempts to distinguish facts, the facts of Ms. A from the facts here, and those points may be perfectly valid. They would still leave the question of whether or not that matters. And I wanted – you answered an early question that I asked about whether this fits squarely under Ms. A, and I believe you answered yes. It does. So isn't this simply a matter of effective authority and the reasonable belief in it? The effective authority deriving from the actual power in fact referred to in Ms. A, and the reasonable belief, no matter how sophisticated Ms. Luba was, that he had that effective authority. Yes, it is. And let me focus on that a little bit because the excerpt of the recording that I read is just as probative, if not more potently probative, of the reasonable belief of the Ms. A argument as well. Because she's tying – she says, we only have a limited amount of time left. Remember, he's up for re-election at the time this is going on, and he's concerned about his finances becoming public knowledge and destroying his re-election bid. And she is tying her payments to him and his ability to help her to the fact that he's mayor because she knows. She's already, as Mr. Barlara said, she bribed people directly. But now she's got a problem with somebody who's going to put this contract out to bid, and she can't go bribe that person. So what does she do? She does the next best thing, and she goes to the mayor and says, help me with that person. Question. Your – Mr. Ballarato says that Congress didn't intend this statute to cover official color of right when it was a matter of influence versus power. Do you comment on that? Yes. My response is that Ms. A is a 7-2 decision of this court, which holds to the contrary. And he hasn't asked this court to – 75. It's a 1975. It's a 7-2 en banc decision. I'm sorry. I want to speak more clearly. 7-2-2. Okay. 7-2-2. Oh, I'm sorry. Yes, sir. Yeah, opinion of this court. And so he's relying on the dissenting opinion rather than the holding of this court because Ms. A contains two holdings, right, that this is within the scope of the Hobbs Act and the evidence was sufficient. Mr. Ballarato has taken the second part of Ms. A where they say the evidence showed that he had the effective power or that the state senator there created in the victim a reasonable belief that he controlled the leasing decisions as a holding of this court, that that's what's required to be sufficient. That's not what this court said. That's not the holding. The defendant may have done all those things in that case and that rebutted his sufficiency challenge on appeal, that he was just peddling his personal influence. But if there's any basis in the record, if it surpasses the threshold of bare rationality that the defendant's status as mayor gives his recommendations, you know, independent heft, right, he's using his mayoral power, it's game, set, and match. I'm not sure Ms. A controls. I mean, isn't this a variation on Ms. A because we're of what Judge Rendell said about the distinction between influence and power? Ms. A is about de facto power, right? I mean, the language from the opinion is that he or she had the de facto power to perform the requested act. Here, what's the requested act? The requested act is to intervene with the school board, not just to get rid of. Get rid of the woman. Well, that was one way he was going to do it. But before that ever came up with respect to the first bribe payment, he was going to intervene with her directly and talk to her and to get her vote. Well, right, to dissuade her from putting the contract out to bid. The idea of getting her off the board. But he definitely didn't have the power to do that. This is all a matter of influence. It was nothing by statute vesting in him the authority or power to make appointments or discharge people as members of the board of school directors. That's correct. Nor was it his duty of the power to not put the contract out for bid. That's right. He controlled, and if I can use the words of Loftus, he controlled the means to that end, which makes us just as bad. He's basically using his power to, say, play ball, essentially, to Stephanie Prada Goh, or that's what he's promising to do, or else. I won't bless your candidacy. The idea of having her or someone else run for state assembly. I want to know what the difference is from Mazet, because Mazet didn't have the power either. There was no statutory power or other source of it giving him the right to award leases. That's correct. So all we had was the perception or belief, reasonable or not, that he had the power to actually effect the writing of a lease or the effect of authority to determine a recipient. And in here, don't we have Luba's testimony that she was well aware that the mayor could not himself accomplish this, that it was going to be a matter of influence? Don't we have testimony to that effect? That's right. Yeah. So doesn't that mean that the Mazet test is not, indeed, fulfilled? No, it doesn't. First of all, Mr. Ballarat is relying on Judge Gibbons' dissent. Judge Gibbons said all this is is selling of influence. But the majority said that's covered. The only difference between Mazet in this case is that the defendant, in this case, knows the means that the defendant is going to use to accomplish the end. What was the jury instructed on this score? Could you refer? I don't have that in front of me. Sure. It's at page 638 of my supplemental appendix. 6 what? 638. Okay. And it reads as follows. The government is not required to prove that the public official actually possessed the official power to guarantee, deny, or influence any official actions. It is enough to show that the cooperating witness reasonably believed that the public official had the actual, residual, or anticipated public official power to help the cooperating witness with respect to matters pending before a government agency. All right. So the word there is power, not influence. The jury was instructed consistent with what I had just read from Mazet about power. That's correct. It wasn't asked about – this is a situation where the jury was asked on watered-down standard and then there was objection or no objection. That's correct. The influence language comes at the end of that instruction when they actually define what official action is. Oh, well, don't spare us that. What does that say? I'm going to go back. This is at 639. Official action means any action by an official relating to their employment or a function as a public servant, which includes using one's influence with other government officials or expediting treatment of the payer's business with government. All right. So that is a step beyond Mazet, then. Right. But that's a step beyond Mazet because we had two – So your argument to that is, well, no objection, plain error, we win. No, our argument is that there's two theories of liability here. Don't say yes to that. I thought there wasn't an objection raised. I thought there wasn't an issue raised as to a jury instruction. No, there was no challenge to the jury instructions. But what I'm trying to make clear is that these jury instructions created two paths to liability. Either he exercised actual official influence over the decision. Actual power? Yes. Or, well, no, influence is what the instruction says. Or if he didn't have it officially, he, at least under Mazet, had created the reasonable belief that he was going to lean on her and fulfill the desired end. I just have to ask, what happened to LaJuba? Did she walk in this whole affair? Yes. Oh, my. She had a non-cooperation agreement. She was never a prosecutor. We make those difficult decisions all the time. She got to keep her money and walk. Yes. And all those arguments were made to the jury. I see my time is up, but the Court has no additional questions. She is still selling insurance, is she? I don't know. I figured that. Thank you. If she is, I hope she's doing it lawfully. Thank you. All right. Mr. Ballarato, you reserved your vote. Yes, Your Honor, if I may. Yes, Marisa Luba walked completely. She made millions and millions of dollars. I'm sure the jury knew that. Yes, they did. Now, you didn't object to the jury instructions. And if there's no objection and no issue before us, then isn't this a sufficiency of the evidence case? Well, Judge, we made a Rule 29 motion because we felt that, based on the law at the time, that the government, under no reasonable set of circumstances, should the case have gone to the jury. At the time we were doing the jury instructions. But, again, that's based on sufficiency of the evidence. Yes. And the reason is because of the jury instructions were difficult at the time because we were doing the jury instructions to conform with both the Hobbs Act and the state bribery statute. And the language that the United States Attorney referred to was language that got put in as a result of reference to the state bribery statute, which, as you know, is broader. But if I can point out to the Court, I suggest that this is an apparent authority, an apparent power case, as in Mazzei, and that there is absolutely, I suggest to you under these facts, no way that a reasonable jury could have concluded that Marisa Luba honestly believed that Mayor Benzevango had the effective authority to remove any member of the school board. Then that's a sufficiency of the evidence challenge. That's exactly right. And where is that? And I don't believe that. I believe that's why the case should not have gone to the jury. The United States concedes that it was not an actual authority case. He did not have the actual authority. And I suggest to you. But they don't need, under Mazzei, they don't need actual authority. Well, they need her to have a reasonable belief that he had the effective authority to do it. The ability. The effective authority to accomplish it. And if she didn't think he had that, why is she paying him all that money? And your answer is because they're good friends, but that's a factual issue, which the jury rejected. I suggest, Your Honor, that under the circumstances of the case, no rational jury could have believed what she said on the witness stand and could have accepted that. Remember that when she testified, she was under the complete control of the government at that time. She was cooperating with the government. She got a complete walk. And when she says, oh, I believe that she accomplished it. She was under such effective, complete control of the government that she immediately disobeyed them and went out and told somebody that she was cooperating with the government contrary to their wishes. Yes, she did that, Judge. The jury had an opportunity to hear that, too. I'd also like to say, Judge, that we relied on the dissent in the Mazzei case, not as the prosecutor pointed out, but we relied on it just the same way that this Court relied on it in the Manzo decision. And that is on a finding that the language in the statute under a color of official right was ambiguous based on the legislative history and on the rule of lenity. And as a result, this case should not have been sent to the jury and should have been dismissed under Rule 29.  Thank you very much, Your Honor. Thank you.